MARIO L. VALENZUELA, ESQ.
BAR #: 087247
3875 Eleventh Street
Riverside, California 92501
PH#: (951) 369-8544
Fax#: (951) 369-3446
E-mail: vnvlaw@aol.com

Attorney for Defendant,
RICARDO BONILLA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>RICARDO BONILLA,<br><br>    Defendant. | Case No.: ED CR  07-28(B)-VAP<br><br>DEFENDANT'S POSITION<br>RE: SENTENCING<br><br>Sentencing Hearing: November 23, 2009<br>at  9:00 A.M. |

   Defendant, RICARDO BONILLA, by and through his counsel, MARIO L. VALENZUELA, submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. §3553(a) in light of United States v. Booker, 125 S. Ct. 738(2005).

   The Defendant's Position Statement is based upon the attached Memorandum of Points and Authorities, the files and records in this matter, and any evidence presented by the defense at the hearing on this matter.

Date: November 6, 2009                              Respectfully submitted,

                                                    _____/S/_____
                                                    Mario L. Valenzuela
                                                    Attorney for Defendant
                                                    RICARDO BONILLA

# I

# INTRODUCTION

The Defendant concurs with the discussion and guideline calculations contained in the Presentence Report (PSR) placing Defendant in a total offense level of 15, criminal history category II, yielding an advisory sentencing guideline range of 21-27 months absent any departures. The defendant also understands that the government is requesting the Court to grant Defendant a four level downward departure from the total offense level of 15 based on Defendant's substantial assistance to the government, resulting in a total offense level of 11 which would result in a guideline range of 10-16 months in Zone C of the United States Sentencing Guidelines (U.S.S.G.). However, based on the circumstances and authorities presented herein, the Defendant's current conviction, his acceptance of responsibility, his substantial cooperation with the government in the prosecution of this case, his background and personal characteristics, it is respectfully requested that this court reduce the applicable Sentencing Guideline range to a total offense level of 9, and sentence the defendant to a term of probation on whatever terms and conditions the court deems appropriate, while minimizing his actual term of confinement so as to allow Defendant the opportunity to remain in the United States for the benefit of his family, the community, and afford Defendant a better opportunity to provide restitution for the economic loss he has caused by his conduct.

# II

# SUMMARY OF OFFENSE CONDUCT

On or about July of 1997, Defendant was the owner and manager of Consorcio Lending, located in Fontana, California. Beginning in approximately 1997, and continuing until approximately

2001, Consorcio Lending effectively operated as Mortgage One's Fontana branch office. In this office, with defendant's knowledge, borrowers', straw borrowers', and fictitious persons' mortgage loan applications were received and/or created, along with income, employment, and credit documents to support the loan applications. These loan packages contained fraudulent documents and Defendant knew this. After receiving and processing these loan application files, Defendant Bonilla and others at Consorcio Lending transferred them to the Mortgage One corporate office for completion of the loan packaging process. Mortgage One would submit the loan package with supporting falsified documents to the Department of Housing and Urban Department (HUD) in order to obtain from HUD mortgage insurance certificates which essentially provided that if the borrower defaulted on the mortgage loan, HUD would reimburse the mortgagee for its losses. Defendant Bonilla was paid certain fees and commissions for the loan applications that Consorcio Lending submitted to Mortgage One once the loans closed. Defendant Bonilla knew that many of the loan applications and supporting documents he was submitting to Mortgage One contained false information and that, in particular, for such loans most of the supporting documents related to the borrowers' income were completely forged. Additionally, Defendant Bonilla was aware that some of Consorcio Lending's loan officers and loan processors changed numbers and otherwise "corrected" W-2s and other employment documents in loan packages. These "corrections" by loan officers and loan processors were made at the directions of Mortgage One Vice President and Underwriter Harper, and also at the direction of Mortgage One Underwriter Michelle Sifuentes. Harper often worked out of the Consorcio Lending office checking loan packages, and Defendant had witnessed and otherwise knew that Harper had himself made false corrections to W-2s and pay stubs.

In summary, Defendant Bonilla submitted at least 13 loan application files to Mortgage One that contained one or more false documents. Mortgage One in turn submitted these fraudulent loan application files to HUD, resulting in loss to HUD in excess of $500,000.

Despite Defendant Bonilla's extensive cooperation with the government's investigation, Mr. Bonilla was indicted, and subsequently entered pleas of guilty to two counts of providing false statements to the Department of Housing and Urban Development. PSR ¶1-3.

III

DEFENDANT'S SUBSTANTIAL ASSISTANCE

The Defendant has provided substantial assistance to the government and the Defendant requests that the Court exercise its discretion pursuant to U.S. v. Tenzer, 213 f.3d 34 (2d Cir. 2000) and depart downward to a greater extent than the government's recommended total offense Level of 11 of the U.S.S.G.

In the early stages of the government's investigation in 2003, the Defendant, without the assistance or presence of defense counsel, and without a written promise of leniency from the United States Attorney Office, provided on at least 3 occasions detailed information about Mortgage One, himself and others' involvement in the offense. At these interviews, Defendant identified several individuals about whom he provided information and who were subsequently charged in the indictment, including Elroy Giddens, John Varner, Abraham Rezex and Katherine Kilmer. In the early part of 2007, the Defendant and his than attorney, Leo Moriarty, participated in three more interviews sessions with the government where he (defendant) provided more extensive and detailed information relating to the criminal activities involving Mortgage One and

the individuals whom he had earlier provided information to government authorities. In February of 2009, the Defendant was contacted again by the government and participated in a two hour interview session to assist the government in preparing its case against co-Defendant John Varner. The Defendant's cooperation with the government culminated on March 18, 2009, when Defendant voluntarily appeared in Court in the trial of John Varner and testified, as a prosecution witness, regarding his dealings with Mortgage One in general, described to the jury the scheme used to defraud various federally-insured banks and financial institutions, and controverted co-Defendant John Varner's testimony at trial.

It is the defense position that the Defendant's testimony at trial relating to the criminal activities involving Mortgage One, Defendant John Varner and other individuals was of greater evidentiary value than that attributed by the government.

Although the Government is correct that, following his indictment, the defendant's cooperation was suspended on the advice of counsel, and that he did not enter his guilty pleas until months after the issuance of the indictment, and following the execution of a plea agreement with the Government, these facts should not be held against Defendant's willingness to continue in his efforts to assist the Government. The only impediment that deferred Defendant from following through with his plea was the fact that he wanted an assurance from the Government that he would be allowed to complete his citizenship application process or be insured that he would not be deported prior to entering his guilty plea. In response, the Government was unwilling or unable to provide the assurance sought by the defendant, however, the defendant ultimately withdrew these demands, and proceeded with his plea agreement and testimony, and continued with his cooperation with government authorities.

In summarizing, the Defendant's early confession and cooperation in the investigation of the offense coupled with the Defendant's substantial assistance with authorities to investigate and prosecute others who had committed an offense warrants a downward departure to a greater extent than the government recommends.

IV

## THE COURT SHOULD ALSO CONSIDER THE FACTORS SET FORTH IN 18 U.S.C. 3553(A)

Although the court is required to consider the guidelines when deciding what sentence to impose, the Defense realizes that, after Booker, the court will also look to the additional sentencing factors listed in 18 U.S.C. § 3553(a) when deciding on the appropriate sentence. The Defense, therefore, reviews some of the section 3553(a) factors below in turn and submits that, in the end, both the guidelines and the additional factors listed in section 3553(a) militate in favor of a sentence of probation.

A.    Nature and Circumstances of the Offense

Section 3553(a) (1) states that the court shall consider the "nature and circumstances of the offense." In this matter, no credible information exists that the defendant modified, generated or created any of the loan applications containing false information. The Defendant's sole culpability lies on Defendant's having knowledge of the fraudulent representations in the loan applications and supporting documents and submitting these loans to Mortgage One for approval. The defense submits that the Defendant's role in the scheme to defraud HUD in this offense was much less pronounced and less significant than the co-Defendant's Elroy Giddens and John Varner.

Regarding the financial profit gained by the Defendant in this offense, it should be noted that from the commissions paid to Defendant, once these fraudulent loans were approved, the defendant paid a major part of the commissions, to independent brokers and his staff leaving Defendant with little or no profit.

B.   History and Characteristics of the Defendant

Section 3553(a) (1) also states that the court shall consider the "history and characteristics of the defendant." Except for Defendant's non-violent misdemeanor convictions for a Driving Under the Influence in May of 1991 and Driving with a Suspended Drivers License in December of 2002, the Defendant's involvement in this offense constituted a single criminal occurrence that represented a marked deviation by the Defendant from and otherwise long and upstanding life. Furthermore, the Defense submits that in considering the Defendant's history and characteristics, the Court consider that Defendant made efforts to cooperate with the government in the early stage of the investigation, without any promise of leniency, when he had nothing to gain, as evidence of his genuine contrition and character beyond a reduction in offense Level provided by his Acceptance of Responsibility. In light of Defendant's background, the Defense submits that a sentence of probation rather than a custodial sentence is appropriate under the circumstances and sufficient to impress upon Defendant a respect for the law and deter future criminal conduct by Defendant.

C.   Need to Avoid Sentencing Disparities

Section 3553(a) (6) states that the court, when considering what sentence to impose, shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." There is no indication that a sentence of

probation will result in unwarranted sentence disparities among defendants, namely, the other defendants who have pleaded guilty to the same offense. Indeed, in light of the fact that many of the other defendants have received probationary sentences, a sentence of imprisonment for this defendant may create a sentencing disparity.

## VI

## CONCLUSION

In sum, based upon the circumstances and authorities presented herein, the defendant's current conviction, his early acceptance of responsibility, his substantial cooperation with authorities to investigate and prosecute others and the 3553(a) factors applicable to Defendant's case, it is respectfully requested that this court reduce the applicable Sentencing Guideline range to a level 9 or lower, and sentence Defendant to a term of probation on conditions the court deems appropriate. If the court believes that a term of imprisonment is warranted, it is requested that Defendant be allowed to serve that confinement in home arrest or permitted to perform community service in lieu of prison.

Dated: November 6 ,2009                              Respectfully submitted,


                                                              /S/
                                     Mario L. Valenzuela
                                     Attorney for Defendant
                                     RICARDO BONILLA